UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and BECTON, DICKINSON and COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AFFYMETRIX, INC.; and LIFE TECHNOLOGIES CORP.,<br><br>Defendants. | Case No.: 17-cv-01394-H-NLS<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>[Doc. No. 8.] |

On July 12, 2017, Plaintiff Becton, Dickinson and Company filed a motion for a preliminary injunction. (Doc. No. 8.) On September 27, 2017, Defendants Affymetrix, Inc. and Life Technologies Corp. filed an opposition to Plaintiff's motion for a preliminary injunction. (Doc. No. 50.) On October 25, 2017, Plaintiff filed a reply. (Doc. No. 60.) The Court held a hearing on the matter on November 20, 2017. Donald R. Ware, Barbara Fiacco, and Jesse Hindman appeared for Plaintiffs. Douglas E. Lumish, Roger J. Chin, and Brent T. Watson appeared for Defendants. For the reasons below, the Court denies Plaintiff's motion for a preliminary injunction without prejudice.

///

///

1

**Background**

On July 10, 2017, Plaintiffs the Regents of the University of California and Becton, Dickinson filed a complaint for patent infringement against Defendants, alleging infringement of U.S. Patent No. 9,085,799, U.S. Patent No. 8,110,673, and U.S. Patent No. 8,835,113. (Doc. No. 1, Compl.) Specifically, Plaintiffs allege that Defendants are directly and indirectly infringing the patents-in-suit by manufacturing and selling products that incorporate polymer tandem dyes Super Bright 600, Super Bright 645, and Super Bright 702 ("the accused products"). (Id. ¶¶ 29-61.) By the present motion, Plaintiff Becton Dickinson moves for a preliminary injunction enjoining "Defendants, until further order of this Court, from (1) selling or offering to sell in the United States any products containing the polymer tandem dyes they currently market as 'Super Bright 600,' 'Super Bright 645,' 'Super Bright 702,' or any other polymer tandem dyes that contributorily infringe claims 1 or 3 of the '799 Patent; or (2) taking any other actions with respect to such dyes that induce others to practice claims 1 or 3 of the '799 Patent." (Doc. No. 8 at 2.)

Although Plaintiffs allege infringement of three patents in the complaint, Plaintiff Becton Dickinson's motion for a preliminary injunction focuses on claims 1 and 3 of the '799 patent. The '799 patent is entitled "Methods and compositions for detection and analysis of polynucleotides using light harvesting multichromophores." U.S. Patent No. 9,085,799 (filed Jul. 21, 2015), at (54). The invention disclosed in the '799 patent relates to "methods, articles and compositions for the detection and analysis of polynucleotides in a sample." Id. at 1:28-30.

The specification of the '799 patent explains: "Methods permitting DNA sequence detection in real time and with high sensitivity are of great scientific and economic interest. Their applications include medical diagnostics, identification of genetic mutations, gene delivery monitoring and specific genomic techniques." Id. at 1:34-38 (footnotes omitted). The specification further explains that at the time of the invention, there was a need in the art for methods of detecting and analyzing particular polynucleotides in a sample, and that such methods are provided in the '799 patent. Id. at 1:49-58.

The specification of the '799 patent describes the method as follows:

> The method of the invention comprises contacting a sample with an aqueous solution comprising at least two components; (a) a light harvesting, polycationic, luminescent multichromophore system such as, for example, a conjugated polymer, semiconductor quantum dot or dendritic structure that is water soluble, and (b) a sensor polynucleotide conjugated to a luminescent signaling chromophore (referred to as "Oligo-C*").

Id. at 3:18-25. Claims 1 and 3 of the '799 patent claim:

> 1. A method comprising:
>
> (a) contacting a sample with a light harvesting multichromophore system, the system comprising:
>
>     i) a signaling chromophore; and
>
>     ii) a water-soluble conjugated polymer comprising a delocalized electronic structure, wherein the polymer can transfer energy from its excited state to the signaling chromophore to provide a greater than 4 fold increase in fluorescence emission from the signaling chromophore than can be achieved by direct excitation of the signaling chromophore in the absence of the polymer;
>
> (b) applying a light source to the sample; and
>
> (c) detecting whether light is emitted from the signaling chromophore.
>
> . . .
>
> 3. The method of claim 1, wherein the signaling chromophore comprises a fluorescent dye.

Id. at 21:51-65, 22:54-55.

## Discussion

**I.  Legal Standards for a Preliminary Injunction in a Patent Infringement Action**

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008); see Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) ("A preliminary injunction

is a 'drastic and extraordinary remedy that is not to be routinely granted.'"). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."[1] Id. at 20. "Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction." Altana Pharma AG v. Teva Pharm. USA, Inc., 566 F.3d 999, 1005 (Fed. Cir. 2009); see Winter, 555 U.S. at 22; Nat'l Steel Car, 357 F.3d at 1325 ("[A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits."). "The grant or denial of a preliminary injunction is within the sound discretion of the district court." Metalcraft of Mayville, Inc. v. The Toro Co., 848 F.3d 1358, 1363 (Fed. Cir. 2017).

## II. Analysis

### A. Likelihood of Success on the Merits

"To establish a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted claims and that its infringement claim will likely withstand the alleged infringer's challenges to patent validity and enforceability." Metalcraft of Mayville, 848 F.3d at 1364; accord Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1376 (Fed. Cir. 2009). "A preliminary injunction should not issue if the accused infringer 'raises a substantial question concerning either infringement or validity.'" Mylan Institutional LLC v. Aurobindo Pharma Ltd., 857 F.3d 858, 866 (Fed. Cir. 2017); see Takeda Pharm. U.S.A., Inc. v. W.-Ward Pharm. Corp., 785 F.3d 625, 630 (Fed. Cir. 2015). "In assessing whether the patentee is entitled to the injunction, the court views the matter in light of the burdens and presumptions that will inhere at trial." Titan

---

[1] The Federal Circuit has explained that the grant or denial of a preliminary injunction is governed by the law of the regional circuit. Murata Mach. USA v. Daifuku Co., 830 F.3d 1357, 1363 (Fed. Cir. 2016). "However, the Federal Circuit has itself built a body of precedent applying the general preliminary injunction considerations to a large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." Id.

Tire, 566 F.3d at 1376.

### i. Infringement

Plaintiff argues that Defendants contributorily infringe and actively induce infringement of claims 1 and 3 of the '799 patent. (Doc. No. 8-1 at 9-13.) A patent infringement analysis proceeds in two steps. Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). In the first step, the court construes the asserted claims as a matter of law. See id. In the second step, the factfinder compares the claimed invention to the accused device. Id. "A determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact." Allergan, Inc. v. Sandoz Inc., 796 F.3d 1293, 1311 (Fed. Cir. 2015).

"'The patentee bears the burden of proving infringement by a preponderance of the evidence.'" Creative Compounds, LLC v. Starmark Labs., 651 F.3d 1303, 1314 (Fed. Cir. 2011). "To prove literal infringement, the patentee must show that the accused device contains every limitation in the asserted claims. If even one limitation is missing or not met as claimed, there is no literal infringement." Riles v. Shell Exploration & Prod. Co., 298 F.3d 1302, 1308 (Fed. Cir. 2002).

"To establish indirect infringement, a patent owner has available two theories: active inducement of infringement and contributory infringement." SRI Int'l, Inc. v. Cisco Sys., Inc., No. CV 13-1534-SLR, 2017 WL 2385604, at *4 (D. Del. June 1, 2017). "'[L]iability for either active inducement of infringement or contributory infringement is dependent upon the existence of direct infringement.'" Golden Blount, Inc. v. Robert H. Peterson Co., 438 F.3d 1354, 1372 (Fed. Cir. 2006); see Limelight Networks, Inc. v. Akamai Techs., Inc., 134 S. Ct. 2111, 2117 (2014).

### ii. Claim Construction

Claim construction is an issue of law for the court to decide. Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 838 (2015); Markman v. Westview Instr., Inc., 517 U.S. 370, 372 (1996). Although claim construction is ultimately a question of law, "subsidiary factfinding is sometimes necessary." Teva, 135 S. Ct. at 838.

"The purpose of claim construction is to 'determin[e] the meaning and scope of the patent claims asserted to be infringed.'" O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008). "It is a 'bedrock principle' of patent law that the 'claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).

Claim terms "'are generally given their ordinary and customary meaning[,]'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1312–13. "In some cases, the ordinary meaning of claim language as understood by a [PHOSITA] may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314. "However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent." O2 Micro, 521 F.3d at 1360. If the meaning of the term is not readily apparent, the court must look to "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean," including intrinsic and extrinsic evidence. See Phillips, 415 F.3d at 1314. A court should begin with the intrinsic record, which consists of the language of the claims, the patent specification, and, if in evidence, the prosecution history of the asserted patent. Id.; see also Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) ("In construing claims, this court relies primarily on the claim language, the specification, and the prosecution history.").

In determining the proper construction of a claim, a court should first look to the language of the claims. See Vitronics, 90 F.3d at 1582; see also Comark Commc'ns v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The appropriate starting point . . . is always with the language of the asserted claim itself."). The context in which a disputed term is used in the asserted claims may provide substantial guidance as to the meaning of the term. See Phillips, 415 F.3d at 1314. In addition, the context in which the disputed term is used in other claims, both asserted and unasserted, may provide guidance because "the usage of a term in one claim can often illuminate the meaning of the same term in

other claims." Id. Furthermore, a disputed term should be construed "consistently with its appearance in other places in the same claim or in other claims of the same patent." Rexnord Corp. v. Laitram Corp., 274 F.3d 1336, 1342 (Fed. Cir. 2001); accord Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed. Cir. 2008); see also Paragon Sols., LLC v. Timex Corp., 566 F.3d 1075, 1087 (Fed. Cir. 2009) ("We apply a presumption that the same terms appearing in different portions of the claims should be given the same meaning." (internal quotation marks omitted)). Moreover, "'[a] claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.'" Vederi, 744 F.3d 1383.

A court must also read claims "in view of the specification, of which they are a part." Markman, 52 F.3d at 979; see 35 U.S.C. § 112(b) ("The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."). "'Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term.'" Vederi, 744 F.3d at 1382. For example, "a claim construction that excludes [a] preferred embodiment [described in the specification] 'is rarely, if ever, correct and would require highly persuasive evidentiary support.'" Adams Respiratory Therapeutics, Inc. v. Perrigo Co., 616 F.3d 1283, 1290 (Fed. Cir. 2010).

But "[t]he written description part of the specification does not delimit the right to exclude. That is the function and purpose of claims." Markman v. Westview Instruments, Inc., 52 F.3d 967, 980 (Fed. Cir. 1995) (en banc). Therefore, "it is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1327 (Fed. Cir. 2012); see also Kara Tech. Inc. v. Stamps.com Inc., 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims.").

In most situations, analysis of the intrinsic evidence will resolve claim construction disputes. See Vitronics, 90 F.3d at 1583; Teva, 135 S. Ct. at 841. However, "[w]here the intrinsic record is ambiguous, and when necessary," district courts may "rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc., 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317). A court must evaluate all extrinsic evidence in light of the intrinsic evidence. Phillips, 415 F.3d at 1319. "Extrinsic evidence may not be used 'to contradict claim meaning that is unambiguous in light of the intrinsic evidence.'" Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1290 (Fed. Cir. 2015); see also Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc., 262 F.3d 1258, 1269 (Fed. Cir. 2001) ("[E]xtrinsic evidence . . . may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even by implication, in the specification or file history."); Vederi, 744 F.3d at 1382 ("[E]xtrinsic evidence may be less reliable than the intrinsic evidence."). In cases where subsidiary facts contained in the extrinsic evidence "are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence." Teva, 135 S. Ct. at 841.

"[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims." O2 Micro, 521 F.3d at 1362. In certain situations, it is appropriate for a court to determine that a claim term needs no construction and its plain and ordinary meaning applies. See id.; Phillips, 415 F.3d at 1314. But "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." O2 Micro, 521 F.3d at 1361. If the parties dispute the scope of a certain claim term, it is the court's duty to resolve the dispute. Id. at 1362; accord Eon Corp. IP Holdings v. Silver Spring Networks, 815 F.3d 1314, 1318 (Fed. Cir. 2016).

///

### iii. Infringement Analysis

Defendants argue that Plaintiff cannot establish likelihood of success on the merits because the accused products do not infringe the '799 patent. (Doc. No. 62 at 7-12.) Specifically, Defendants argue that the accused products do not include a "multichromophore system" and do not "contact[] a sample" under the proper constructions for those two claim terms. (Id. at 7-11.) In response, Plaintiff Becton Dickinson argues that Defendants' proposed claim constructions are flawed and should be rejected. (Doc. No. 63 at 3-5.)

With respect to the term "multichromophore system," Defendants argue that this term should be construed to require that the claimed "multichromophore system" include a "cationic conjugated polymer." (Doc. No. 62 at 9.) In support of this argument, Defendants rely on language in the specification of the '799 patent explaining that "[t]he multichromophores used in the present invention are polycationic and can interact with a sensor polynucleotide electrostatically." '799 Patent at 11:41-43; see also id. at 1:59-60 ("A sample suspected of containing the target polynucleotide is contacted with a polycationic multichromophore . . . ."), at 3:18-21 ("The method of the invention comprises contacting a sample with an aqueous solution comprising at least two components; (a) a light harvesting, polycationic, luminescent multichromophore system . . . ."), at 6:1-20 ("DEFINITIONS . . . Whether modified or unmodified, the sensor polynucleotide is anionic and can interact with the cationic multichromophore in the absence of target polynucleotide."), at 12:59-62 ("Chromophores useful in the inventions described herein include any substance which can absorb energy from a polycationic multichromophore in an appropriate solution and emit light."). Defendants argue that under Federal Circuit precedent, such statements characterizing the invention as a whole serve to define and limit the claims. (Doc. No. 62 at 8.) See Pacing Techs., LLC v. Garmin Int'l, Inc., 778 F.3d 1021, 1025 (Fed. Cir. 2015) ("When a patentee describes the features of the present invention as a whole, he alerts the reader that this description limits the scope of the invention." (internal quotation marks omitted)); Luminara Worldwide, LLC v. Liown

Elecs. Co., 814 F.3d 1343, 1353 (Fed. Cir. 2016) (same); see, e.g., Honeywell Int'l, Inc. v. ITT Indus., Inc., 452 F.3d 1312, 1318 (Fed. Cir. 2006) ("[T]he written description uses language that leads us to the conclusion that a fuel filter is the only 'fuel injection system component' that the claims cover, and that a fuel filter was not merely discussed as a preferred embodiment. On at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention[.]'"). Defendants further argue that the '799 patent uniformly describes the claimed "multichromophore system" as positively-charged (cationic), and never as neutral or anionic. (Doc. No. 62 at 8.) Defendants argue that the accused products do not include a positively-charged (cationic) conjugated polymer, and, thus, the accused products do not include the limitation of a "multichromophore system" under the proper construction for that claim term, and they do not infringe the '799 patent. (Id. at 9.)

With respect to the term "contacting a sample," Defendants argue that this term should be construed to require that the claimed method is used to target a polynucleotide. (Doc. No. 62 at 9.) Similar to their arguments related to the prior claim term, Defendants support this proposed construction by relying on language in specification describing the invention and stating: "[t]his invention relates to methods, articles, and compositions for the detection and analysis of polynucleotides in a sample." Id. at 1:28-30; see also id. at 1:56-62 ("Methods, compositions and article of manufacture for detecting and assaying a target polynucleotide in a sample are provided. A sample suspected of containing the target polynucleotide is contacted with a polycationic multichromophore and a sensor polynucleotide complementary to the target polynucleotide."), at 3:18-23 ("The method of the invention comprises contacting a sample with an aqueous solution comprising at least two components; . . . and (b) a sensor polynucleotide . . . ."), at 1:49-50 ("There is a need in the art for methods of detecting and analyzing particular polynucleotides in a sample."). Defendants argue that these passage are definitional and limit the scope of the claims. (Doc. No. 62 at 10). See Pacing Techs., 778 F.3d at 1025; Luminara Worldwide, 814 F.3d at 1353; Honeywell Int'l, 452 F.3d at 1318. Defendants further argue that there is no

example in the '799 patent of interrogating a sample for a target other than a polynucleotide. (Doc. No. 62 at 10.) Defendants argue that accused products are not used with polynucleotide samples, and, thus, they do not "target[] a sample" under the proper construction for that claim term, and they do not infringe the '799 patent. (Id.)

In response, Plaintiff Becton Dickinson argues that the Court should reject Defendants' proposed constructions because the proposed constructions erroneously import limitations from preferred embodiments contained in the specification into the claims. (Doc. No. 63 at 3-4.) See Dealertrack, 674 F.3d at 1327 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited."). Plaintiff argues that the term "multichromophore" should be given its plain meaning, which is "many chromophores" where "[a] chromophore is a compound that absorbs light and gives off color." (Doc. No. 63 at 3.) Plaintiff argues that the term "sample" should also be given its plain meaning, which is "a substance to be analyzed." (Id. at 4.) In support of these proposed plain meanings, Plaintiff relies on extrinsic evidence in the form of a declaration from its expert, Dr. Timothy M. Swager. (Doc. No. 63-1, Swager Rebuttal Decl. ¶¶ 4-5, 12.)

In sum, the parties have presented the Court with a legitimate claim construction dispute as to these two claim terms. In addition, Plaintiff does not dispute Defendants' contention that the accused product would not infringe claims 1 and 3 of the '799 patent if the Court were to adopt either of Defendants' proposed constructions. In light of this, the Court, exercising its sound discretion, concludes that the prudent course is to deny Plaintiff Becton Dickinson's motion for a preliminary injunction without prejudice. Based on the present record prior to the Court's claim construction, Plaintiff has failed to establish likelihood of success on the merits at this stage of the action.[2] See Nat'l Steel Car, 357

---

[2] Because "a movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits," Nat'l Steel Car, 357 F.3d at 1325, the Court declines to address the other preliminary injunction factors at this time.

11

F.3d at 1325 ("[A] movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits."); see also Altana Pharma, 566 F.3d at 1005 ("Although the factors are not applied mechanically, a movant must establish the existence of both of the first two factors to be entitled to a preliminary injunction."). The Court elects to proceed to a claim construction hearing based on full claim construction briefing rather than a few pages of briefing in Defendants' opposition and Plaintiff's reply brief. Additionally, the Court will have the benefit of the relevant prosecution history at the expedited claim construction hearing.

**Conclusion**

The parties have legitimate disputes on claim construction and invalidity. Given the present record, the Court, exercising its sound discretion, denies without prejudice Plaintiff Becton Dickinson's motion for a preliminary injunction as Plaintiff has not met its burden of showing likelihood of success on the merits. Moreover, in light of the parties' claim construction dispute, the parties may submit a joint proposal to the Court by **Wednesday, November 29, 2017** to advance the claim construction hearing for all the patents-in-suit and the related dates in this action. The Court's preference is to hold claim construction hearings on Fridays at 10:00 a.m.

**IT IS SO ORDERED.**

DATED: November 20, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT