# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and BECTON, DICKINSON and COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AFFYMETRIX, INC.; and LIFE TECHNOLOGIES CORP.,<br><br>Defendants. | Case No.: 17-cv-01394-H-NLS<br><br>**ORDER GRANTING JOINT MOTION FOR AN ORDER GOVERNING DISCOVERY OF ELETRONICALLY STORED INFORMATION**<br><br>[Doc. No. 80.] |

On December 18, 2017, the parties filed a joint motion for an order governing the discovery of electronically stored information. (Doc. No. 80.) For good cause shown, the Court grants the parties' joint motion and enters the following order:

1. This Order supplements all other discovery rules and orders, including the Protective Order in this case. It streamlines ESI collection and searching to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified in the Court's discretion or by agreement of the parties. If the parties cannot resolve their disagreements regarding such modifications, the parties shall submit their competing proposals to the Court in accordance with the Court's

discovery dispute procedures.

3. Proportionality: Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify and produce relevant information. This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, phased discovery, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

4. Search Terms: Focused terms, rather than over-broad terms, shall be employed to search custodial data, e.g. email and other ESI collected from named custodians. The parties shall timely attempt to reach agreement on search terms, or a computer- or technology-aided methodology, and shall continue to cooperate in revisiting the search terms or computer or technology-aided methodology. The parties' development and negotiation of search terms for custodial e-mail and other ESI shall not be grounds for a party to delay review, collection, or production of non-custodial or other documents (e.g., network shared documents, laboratory notebooks, development files, etc.) that the producing party is able to, and without undue burden, identify and locate without the use of search terms. The parties shall also make reasonable efforts to engage in collection efforts prior to the finalization of search terms.

   a. Each Producing Party shall be responsible for generating a searching protocol that it will apply to its custodial data that it believes in good faith will return a reasonably high proportion of responsive documents. Within fourteen (14) days of the entry of this Order or within such time as the Parties agree, the Parties will exchange proposed search terms that each Producing Party proposes to use to identify its responsive email or other custodial ESI. A Producing Party need not apply the same search terms to all custodians, but must disclose if it is applying some search terms to some custodians but not others.

   b. A Producing Party is not limited to searches using the disclosed terms and may conduct broader searches using other terms, at the Producing Party's discretion, without disclosing those additional or broader searches to the Requesting Party. A Producing Party need not disclose search terms or strategies that will reveal privileged or

2

17-cv-01394-H-NLS

work product information.

  c. The Requesting Party, within 7 days of the receiving the Producing Party's proposed terms, may request revisions to the Producing Party's proposed terms and may request no more than twenty (20) additional search terms per side to be used in connection with the search of email or other ESI that the Requesting Party in good faith believes will return a reasonably high proportion of responsive documents without overbreadth or undue burden. The foregoing limit assumes that the Producing Party has made good faith efforts to develop a robust initial set of proposed search terms, and the Court may consider the scope and reasonableness of the initial proposed search in considering requests for further searches. Notwithstanding this limit, the parties shall cooperate to minimize and narrow disputes, and meet and confer as necessary, to ensure that their search proposals identify responsive documents while avoiding overbreadth or undue burden, including agreeing to increase the limit on search terms if needed without Court leave. The Court may consider and grant contested requests for additional search terms, upon a showing that additional search terms are likely to identify relevant and responsive documents without overbreadth or undue burden and in view of the adequacy of the Producing Party's initial proposed terms.

  d. Upon receipt of the Requesting Party's search terms, the Producing Party shall use the search terms proposed by the Requesting Party unless the Producing Party objects to the use of a given term within 7 days and explains the basis of its objection. Where possible, the Producing Party shall propose with its objection revisions to the search terms or other computer or technology-aided methodology in an effort to resolve or narrow its objections.

  e. The parties shall meet and confer in good faith to resolve any disputes that may arise over the search terms and/or the use of other technology-aided methodology and to ensure the terms are sufficiently tailored to capture documents relevant to the above-captioned litigation. The parties shall work cooperatively to minimize and narrow disputes and ensure that their respective searches identify responsive documents while avoiding

3

17-cv-01394-H-NLS

overbreadth or undue burden. If the parties cannot resolve their dispute regarding search terms and/or the use of other computer- or technology-aided methodology after reasonable, thorough good faith negotiations, the Requesting Party may seek relief from the Court in accordance with the Court's discovery dispute procedures.

    f.    A Producing Party may amend its search terms at any time if any term in good faith appears to be overly broad, either in general or as applied to a particular custodian or custodial data source. The Producing Party shall notify the Requesting Party of its amendment and whether the amendment will apply to searches of all custodians or only with respect to particular custodians or custodial data sources. The parties agree to the same dispute resolution procedures set forth in paragraph (e) above with respect to any such amendment.

    g.    The parties recognize that discovery is an iterative process. A Requesting Party may therefore request the use of supplemental search terms (up to a cumulative total limit of fifteen (15) supplemental search terms for each side) at any time prior to thirty (30) days before the date set by the Court for substantial completion of document discovery if i) discovery reveals information that in good faith indicates supplemental term(s) will capture relevant, responsive documents and are not cumulative of previous searches or ii) the Requesting Party serves additional noncumulative discovery requests necessitating additional searches. The Requesting Party must identify the specific custodians and time periods it requests be searched using the supplemental search term(s). The parties may jointly agree to modify this limit without the Court's leave. The foregoing limitation does not modify each party's existing independent obligations under Fed. R. Civ. P. 26(e) to ensure that its discovery disclosures are not incomplete or incorrect in any material respect, including by conducting additional searches as necessary. The Court may consider and grant contested requests for additional supplemental search terms, upon a showing that relevance or materiality of such search terms could not have been reasonably known when the parties negotiated their initial search terms and are likely to identify noncumulative relevant and responsive documents without overbreadth or undue burden, taking into

account the progress of discovery and the proximity of the request to discovery deadlines. The same dispute resolution procedures set forth in paragraph (e) above applies with respect to supplemental terms or if a Requesting Party seeks Court approval of additional supplemental search terms beyond the limit as to number of terms or time of request set forth above.

     5.    Custodian Collection: The parties will negotiate in good faith to identify and limit the number of custodians whose data (both email and user-generated data) is collected. The Requesting Parties can request collection and search of data from up to a total of ten custodians per side from the Producing Parties. The parties may jointly agree to modify this limit without the Court's leave. The Court may consider contested requests for additional custodians per side, upon showing a distinct need based on the size, complexity and issues of this specific case.

     6.    Non-Custodial ESI Collection: Nothing in this Order shall require a producing party to utilize any particular collection protocol for any particular source of Non-Custodial ESI. For avoidance of doubt, targeted collection may be used to collect potentially relevant documents from any Non-Custodial ESI data source.

     7.    System File Filtering: The parties will use their best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list.

     8.    Deduplication: A party is only required to produce one copy of each responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level) on a global scale as long as the Producing Party has the ability to, and does, provide information identifying the other custodians who possessed any given record or ESI, for example in a "custodian" meta data field. Alternatively, a party may elect to de-duplicate each custodian's responsive ESI and may de-duplicate the party's non-custodial ESI (based on MD5 or SHA-1 hash values at the document level). To the extent emails are produced, the following procedures shall apply. For emails with

attachments, the hash value is generated based on the parent/child document grouping. To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

9. Production Specifications and Format: The parties have agreed to produce documents using the format described in the ESI Protocol attached to the Joint Discovery Plan. To the extent that circumstances require a party to produce documents in a format other than the format described in the ESI Protocol, e.g. prior or to or during a deposition or other proceeding, the Producing Party will produce the documents in the agreed format shortly thereafter.

10. Preservation of Discoverable Information: A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control. Absent a showing of good cause, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve discoverable information currently in their possession, custody or control.

11. The parties agree that, absent good cause, the following categories of information need not be preserved nor searched: (1) deleted, slack, fragmented, or other data only accessible by forensics; (2) random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system; (3) on-line access data such as temporary internet files, history, cache, cookies, and the like; (4) data in metadata fields that are frequently updated automatically, such as last-opened dates; (5) data stored on disaster recovery tapes, back-up tapes or other back-up data not otherwise accessed in the normal and ordinary course of business; (6) voice messages; (7) instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging; (8) electronic mail or pin-to-pin messages sent to or from mobile devices (e.g., smart phones), provided that a copy of such mail is routinely saved elsewhere; (9) other electronic data stored on a mobile device, such as calendar or contact

data or notes, provided that a copy of such information is routinely saved elsewhere; (10) logs of calls made from mobile devices; (11) server, system or network logs; (12) electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved in the ordinary course of business or as part of a laboratory report; (13) unindexed electronic data generated by laboratory equipment and kept in a proprietary / non-standard file format provided that such data is not ordinarily preserved in the ordinary course of business or as part of a laboratory report; or (14) data remaining from systems no longer in use that is unintelligible on the systems in use. Nothing in this section shall limit a Requesting Party's right to request from a Producing Party more information about the nature of and burden associated with obtaining documents from a particular location.

12. Third-Party Confidentiality Obligations: To the extent that relevant ESI or other documents sought for production implicate confidentiality obligations owed to third-parties ("Protected Third-party Information"), the Producing Party will negotiate with those third-parties in good faith to secure the third-party's approval for production of the Protected Third-party Information. To the extent that the Producing Party is unable to secure approval from the third-party, the Producing Party will promptly inform the Requesting Party of the existence of the Protected Third-party Information and the contact information for the third party such that the Requesting Party is able to negotiate with the third-party and, if necessary, seek appropriate relief from the Court.

**IT IS SO ORDERED.**

DATED: December 22, 2017

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT