UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> AFFYMETRIX, INC., et al., <br><br> Defendants. | Case No.: 3:17-cv-1394-H-NLS <br><br> **ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE NO. 3** <br><br> **[ECF Nos. 186, 187]** |

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute No. 3 ("Discovery Dispute"). ECF Nos. 186 (redacted), 188 (sealed lodged). The Court finds that Defendants fail to carry their burden to establish the common interest doctrine applies, and will **GRANT** the motion to compel.

## I. MOTION TO SEAL

The Plaintiff also moves, unopposed, to seal certain portions of the dispute and several exhibits attached. ECF No. 187. Having reviewed the Plaintiff's motion to seal and the Discovery Dispute and exhibits attached thereto, the Court finds that Plaintiff was overzealous in some of the redactions to the Discovery Dispute (*e.g.* general dates such as

month and year). However, there is good cause to seal the exhibits attached to the Discovery Dispute, and all the redactions correlate to the information contained in the exhibits. The Motion to Seal is **GRANTED**.

## II. BACKGROUND

This is a patent infringement case regarding fluorescent dyes used as biomarkers. ECF No. 101 (First Amended Complaint). Defendant Affymetrix is alleged to have infringed Plaintiff's patented dyes through creation of "Super Bright" dyes. *Id.* In the course of discovery, Plaintiff obtained documents (presumably by way of subpoena though the parties do not specify) from third party AAT, a company Defendants "used to design and manufacture the accused dye molecules." ECF No. 188 at 1. The Discovery Dispute presents disagreement over the assertion of privilege for an attachment to an email that was inadvertently produced by AAT and subsequently clawed-back. ECF No. 188 at 1.

The email in question was sent from Travis Jennings, an Affymetrix scientist, to Steven Yee, Affymetrix's in house counsel. ECF No. 188 at 10. Included as carbon copy recipients were also: Ryan Simon, Affymetrix general counsel; Dan St. Louis (whose relationship is neither identified nor challenged); and—the point of controversy—Jack Diwu, the lead scientist and principal for third party AAT. *Id.* at 2, 10. At the time the email was sent, AAT and Affymetrix were negotiating but had not yet executed a License and Supply Agreement. *Id.* at Ex. E. Plaintiff argues that inclusion of Mr. Diwu on the email chain destroys any claim of privilege and the document must be produced. Alternatively, Plaintiff argues the attachment contains facts not communications and so, cannot be privileged. Defendants argue an exception to the waiver of privilege, the common interest doctrine, applies, and is properly being asserted by both Defendants and AAT to prevent production of the attachment in question.[1]

---

[1] The Court agrees with Defendants that no other documents are before the Court apart from the single attachment identified in Exhibit A. ECF No. 188 at 8, n 4.

## III. LEGAL STANDARDS

Where issues are not unique to patent law, the law of the circuit in which the dispute arises is applicable. *In re Regents of U. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (applying Seventh Circuit law to privilege issue in patent case); *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 576 (N.D. Cal. 2008) ("the issue of waiver itself and the scope of that waiver as it applies to other documents does not fall exclusively in the realm of patent law and therefore the court will consider Ninth Circuit law for that determination.") (*citing GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001)).

The attorney-client privilege protects confidential communications between a client and his or her attorney for the purposes of obtaining legal advice. *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992). The party asserting the attorney-client privilege has the burden of establishing the existence of the attorney-client privilege. *Id.* at 1070-71. The party asserting the privilege must establish: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived." *Id.* at 1071 n.2 (quoting *Matter of Fischel*, 557 F.2d 209, 211 (9th Cir. 1977)).

Attorney-client communications "made in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon that confidentiality." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation omitted). Any exception to this rule must be construed narrowly to avoid "creating an entirely new privilege." *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1128 (9th Cir. 2012).

The "common interest" or "joint defense" doctrine is an exception to the general rule that disclosure of protected material to third parties constitutes a waiver. *Nidec Corp.*, 249 F.R.D. at 578. The common interest doctrine is "designed to allow attorneys

3

3:17-cv-1394-H-NLS

for different clients pursuing a common legal strategy to communicate with each other." *In re Pac. Pictures Corp.*, 679 F.3d at 1129 (citing *Hunydee v. United States,* 355 F.2d 183, 185 (9th Cir. 1965)). The exception is available regardless of whether litigation has actually commenced. *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964). The common interest exception applies when "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (citing *In re Mortgage Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997)).

There must be "an on-going and joint effort to set up a common defense strategy" for the common interest exception to apply. *U.S. ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996). "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pac. Pictures Corp.*, 679 F.3d at 1129. "Instead, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." *Id.* An agreement to set up a common defense strategy "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation." *United States v. Gonzalez*, 669 F.3d 974, 979 (9th Cir. 2012) (quoting *Continental Oil Co.*, 330 F.2d at 350).

The existence of an express or implied joint defense agreement "is not necessarily an all-or-nothing proposition." *Id.* at 981. The separate parties "need not have identical interests and may even have some adverse motives," but must share a common interest in litigation. *Id.* (citing *Hunydee*, 355 F.2d at 185). In the attorney-client privilege context, such an agreement must be founded on "a common legal, as opposed to commercial, interest." *Nidec Corp.*, 249 F.R.D. at 579 (quoting *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995)). Additionally, the

communications at issue must be "designed to further *that* legal effort." *Id.* (quoting *Bergonzi*, 216 F.R.D. at 495) (emphasis in original).

"The protection of the privilege under the community of interest rationale, however, is not limited to joint litigation preparation efforts. It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance." *Id.* at 578 (quoting Rice, Attorney Client Privilege in the United States § 4:36, at 216). Parties may have both common commercial and legal interests, such as when the parties are discussing a merger or negotiating for a patent license. *See, e.g.*, *Louisiana Mun. Police Employees Ret. Sys. v. Sealed Air Corp.*, 253 F.R.D. 300, 310 (D.N.J. 2008) ("The weight of case law suggests that, as a general matter, privileged information exchanged during a merger between two unaffiliated business would fall within the common-interest doctrine.") (quoting *Cavallaro v. United States*, 153 F.Supp.2d 52, 61 (D. Mass. 2001), *aff'd* 284 F.3d 236 (1st Cir. 2002)); *In re Regents of Univ. of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (communications between defendant and third party negotiating for exclusive license to defendant's patents were protected under the common interest exception, reasoning in part that the communications were designed to reduce or avoid litigation). *Compare Santella v. Grizzly Indus., Inc.*, 286 F.R.D. 478, 482 (D. Or. 2012) (third party waived privilege when it sent "offering package" with its attorney's opinion to numerous potential investors because potential investors had only a commercial interest in the information).

## IV. DISCUSSION

Plaintiff raises three arguments in its motion to compel production: First, that applicable Ninth Circuit law regarding attorney-client privilege requires that each side be represented for any common interest or joint defense exception to the rules of waiver to be applicable. Second, that even in the absence of an attorney to represent AAT, there was not an agreement between AAT and Affymetrix sufficient to support a common interest. Third and finally, that the attachment in question contains facts and not communications and so, is not subject to protection.

Here, neither party disputes that the email to which the challenged document is attached sought legal advice; it is simply Mr. Diwu's relationship to Affymetrix that causes challenge, and falls into a somewhat nebulous area. Confidential communications between inventors or employees who work for the same employer can retain their privilege so long as they are "made in furtherance securing legal advice." § 42:51.50 Communications among inventors, 7 Annotated Patent Digest (Matthews) § 42:51.50; *Park v. Cas Enterprises, Inc.*, 08-CV-0385 DMS (NLS), 2009 WL 3565293, at *3 (S.D. Cal. Oct. 27, 2009), *abrogated on other grounds In re Queen's U. at Kingston*, 820 F.3d 1287 (Fed. Cir. 2016) (holding communications between non-attorney employees about "its patent application and [plaintiff's] patents" were privileged because made at the direction of counsel and intended to seek legal advice); *see also*, § 42:45 Intra-corporate communications between non-lawyers, 7 Annotated Patent Digest § 42:45 ("Communications among non-attorneys corporate employees where the dominant purpose is to secure legal advice from an attorney may be privileged"). However here, there is also no dispute that Mr. Diwu was an employee of AAT, a separate company and employer. Though not within the Ninth Circuit, at least one case held communications between co-inventors not employed by the same company are *not* privileged. *Braun v. Medtronic Sofamor Danek, Inc.*, 2:10-CV-1283, 2013 WL 4537776, at *2 (D. Utah Aug. 27, 2013) (finding letter conveying legal advice from in-house attorney to employee subsequently disclosed to third-party co-inventor was not privileged).

Both the Ninth Circuit and this Court have held that communications between corporate counsel and a third party can retain their privilege *if* the third party is the functional equivalent of an employee. *United States v. Graf,* 610 F.3d 1148, 1159 (9th Cir. 2010) (holding an outside consultant's role in the company was that of a functional employee, thus implicating the corporate attorney-client privilege.); *Gen-Probe Inc. v. Becton, Dickinson and Co.*, 09CV2319 BEN NLS, 2012 WL 1155709, at *3 (S.D. Cal. Apr. 6, 2012) (holding privilege extends to plaintiff's patent prosecution counsel's communications with third party independent contractor hired specifically for the project

and thus, the functional equivalent of employee). Here, no party argues that Mr. Diwu was the functional equivalent of an employee of Affymetrix. AAT is a separate company, and the patent was eventually jointly assigned to both Affymetrix and AAT. ECF No. 188 at 10.

As neither a co-worker nor the functional equivalent of an employee, this case presents a third party business associate that was included on a communication between Affymetrix and its counsel. Accordingly, privilege was waived by Mr. Diwu's inclusion, unless the common interest exception applies.

Plaintiff argues that the common interest doctrine cannot be asserted because AAT did not have separate counsel. There is support for the position that all parties must be represented by counsel for the common interest exception to apply, distinguishing a joint-defense/co-client situation[2] (i.e., two parties who hire the same attorney), from a common interest arrangement (i.e. two parties with separate counsel whose legal interests are aligned). *In re P. Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012) (the "common interest" or "joint defense" rule is an exception to ordinary waiver rules designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other"); *FSP Stallion 1, LLC v. Luce*, 2:08-CV-01155-PMP, 2010 WL 3895914, at *18 (D. Nev. Sept. 30, 2010) ("the majority of courts apply the common interest doctrine where parties are represented by separate counsel but engaged in a common legal enterprise"); Restatement (Third) of the Law Governing Lawyers § 76 (2000) (cmt. d, "A

---

[2] Defendants do not argue that Affymetrix's in-house counsel represents AAT. They do attempt to argue that Affymetrix's in-house counsel represents the parties joint "interests." However, the Court agrees that attorneys must represent clients, not interests. *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332, 1338 (Fed. Cir. 1988) ("The bottom line, however, is that attorneys represent *clients*—not legal positions or patents.")(emphasis in original); *see also, Alchemy II, Inc. v. Yes! Ent. Corp.*, 844 F. Supp. 560, 565 (C.D. Cal. 1994) (examining *Telectronics,* and holding that licensor of copyrights did not become a client of law firm hired by exclusive licensee of copyrights for purposes of prosecution: "Alchemy did not become a client of Brown & Bain by virtue of the fact that it licensed its copyrights to WOW.")

person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement within this Section."). *See also, California Inst. of Tech. v. Hughes Commun., Inc.*, 213CV07245MRPJEM, 2015 WL 11120674, at *1 (C.D. Cal. Feb. 24, 2015) (finding the common interest exception inapplicable because the documents were not privileged in the first instance and Caltech has not shown that the parties "had agreed to a joint legal strategy with any attorney"). The requirement that each party to a common interest arrangement have an attorney also comports with the intent behind the common interest privilege, to permit attorneys to develop a joint legal strategy; the development of legal strategy requires the participation of lawyers. *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 248, 249 (4th Cir. 1990) ("The concept of a joint defense privilege first arose in the context of criminal co-defendants whose attorneys shared information in the course of devising a joint strategy for their clients' defense."); *FSP Stallion 1, LLC v. Luce*, 2:08-CV-01155-PMP, 2010 WL 3895914, at *16 (D. Nev. Sept. 30, 2010) ("It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel."); § 42:35.General aspects of the "common interest" or "joint defense" doctrine, 7 Annotated Patent Digest § 42:35 ("The 'common interest' or 'joint defense' doctrine 'generally allows a defendant to assert the attorney-client privilege to protect his statements made in confidence not only to his own lawyer, but to an attorney for a co-defendant for a common purpose related to the defense of both.") (*quoting For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 1989611, *3 (N.D. Ill. April 28, 2003)).

While this Court was not able to locate any Ninth Circuit precedent that *explicitly* requires both parties be represented by separate counsel, nor was there any precedent that extended the benefits of the common interest exception to the attorney client privilege when the disclosure at issue involved an unrepresented third-party employed by a separate entity. *See Rembrandt Pat. Innovations, LLC v. Apple Inc*, C 14-05093 WHA,

2016 WL 427363, at *3 (N.D. Cal. Feb. 4, 2016) (invoking common interest doctrine to prevent production of communications exchanged between the university and its counsel that were later disclosed to the named inventors, all of whom were students or employees of the university, and were found to have a legal interest in royalties from the patent). Review of case law regarding common interest exception within the Ninth Circuit reveals that in analogous cases where the common interest exception was applied in the attorney-client (as opposed to work-product[3]) context, the parties on both sides of the equation were represented by counsel. *Youngevity Intl., Inc. v. Smith*, 16-CV-704 BTM (JLB), 2017 WL 4227025, at *2–4 (S.D. Cal. Sept. 22, 2017), *objections overruled*, 16-CV-704 BTM (JLB), 2017 WL 6043669 (S.D. Cal. Dec. 5, 2017) (finding the common interest doctrine prevented production of emails where all parties represented, though counsel not included on one of the emails disclosed); *In re Mortg. & Realty Tr.*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997) (applying common interest exception to prevent disclosure of communications among company executive, company's bankruptcy counsel, and counsel for the creditors' committee).

Defendants rely heavily on *In re Regents of the University of California, ("Regents")* 101 F.3d 1386 (Fed. Cir. 1996) to argue the common interest exception should apply. ECF No. 188 at 13-14. In *Regents,* the Federal Circuit held the common interest exception prevented the disclosure of communications between UC and Eli

---

[3] Defendants, properly, do not assert work product privilege; but case law examining the common interest privilege in the work product context does not necessarily require representation on all sides. *See, e.g., Eagle Harbor Holdings, LLC v. Ford Motor Co.*, C11-5503 BHS, 2015 WL 196713, at *2 (W.D. Wash. Jan. 14, 2015) (holding the common interest privilege did not extend to communications with business partners, "even if the communication includes advice from counsel….On the other hand, the common interest privilege may be used to protect work-product that is disclosed to third parties."); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 580 (N.D. Cal. 2007) ("Finally, the Court notes that, although the common interest exception to waiver requires that a disclosure be made in furtherance of a common legal interest in order to preserve the attorney-client privilege, the disclosure to a third party does not necessarily constitute a waiver of the work product privilege."); *Pulse Engr., Inc. v. Mascon, Inc.*, CIV. 08CV0595JM(AJB), 2009 WL 3234177, at *4 (S.D. Cal. Oct. 2, 2009) (invoking common interest to prevent disclosure where only work-product protection raised).

Lilly's ("Lilly") in-house counsel because as an optionee and licensee of the patent, Lilly shared a common interest in obtaining a valid and enforcable patent. *Regents,* 101 F.3d at 1388-90. While there are some similarities between the cases, there are also notable distinctions. First, both parties were represented by separate counsel. *Id.* at 1389, 1390 "The Lilly attorneys advised and consulted frequently with UC counsel on matters relating to UC's patents"). Second, UC and Lilly had entered an exclusive option and license agreement. *Id.* at 1388-89. Here, during the time of the communication in question, there were simply non-binding letters of intent, as opposed to an executed option agreement. ECF No. 188 at Exs. D, F, G. Third, the communications at issue in *Regents* occurred during patent prosecution, not during development of the underlying technology. *Id.* at 1389 (reviewing the District Court's order which stated, "the entities were prosecuting patents"). This is notable because the common interest in the UC patent was pending at the time of the communications, as opposed to speculative future possibility dependent on the development of technology. These factors distinguish *Regents* from the issue at bar, and Defendants have not cited to any Ninth Circuit authority to support their position.

Defendants have not satisfied their burden to show that the common interest exception is available to protect the attachment at issue. Without clearing this first hurdle to invoke the common interest exception, the Court need not reach the remaining arguments. Plaintiff's motion to compel is **GRANTED**. Defendant is ORDERED to produce the attachment by no later than **July 6, 2018**.

**IT IS SO ORDERED**.

Dated: June 19, 2018

_____
Hon. Nita L. Stormes
United States Magistrate Judge