# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; and BECTON, DICKINSON and COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AFFYMETRIX, INC.; and LIFE TECHNOLOGIES CORP.,<br><br>Defendants. | Case No.: 17-cv-01394-H-NLS<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' RULE 72(a) OBJECTIONS TO THE MAGISTRATE JUDGE'S JUNE 19, 2018 ORDER; AND**<br><br>[Doc. No. 205.]<br><br>**(2) DENYING DEFENDANTS' MOTION TO STAY PENDING APPEAL**<br><br>[Doc. No. 209.] |

On May 23, 2018, the parties filed a joint motion for the determination of a discovery dispute. (Doc. No. 186.) On June 19, 2018, the Magistrate Judge issued an order on the parties' joint motion, rejecting Defendants' assertion of privilege and granting Plaintiffs' motion to compel. (Doc. No. 197.) On July 3, 2018, Defendants Affymetrix, Inc. and Life Technologies Corp. filed objections pursuant to Federal Rule of Civil Procedure 72(a) to the Magistrate Judge's June 19, 2018 order. (Doc. No. 205.) On July 3, 2018, Defendants

also filed a motion to stay production of the document at issue pending appellate review. (Doc. No. 209.) On July 23, 2018, Plaintiffs the Regents of the University of California, Becton, Dickinson and Company, Sirigen, Inc., and Sirigen II Limited filed their oppositions to Defendants' objections and Defendants' motion to stay. (Doc. Nos. 222, 223.) On July 30, 2018, Plaintiffs filed corrected oppositions. (Doc. Nos. 234, 235.) On July 30, 2018, Defendants filed their replies. (Doc. No. 238, 239.)

The Court held a hearing on the matters on August 6, 2018. Marco J. Quina and Jesse Hindman appeared for Plaintiffs. Melissa A. Sherry and Brent T. Watson appeared for Defendants. For the reasons below, the Court denies Defendants' Rule 72(a) objections to the Magistrate Judge's June 19, 2018 order, and the Court denies Defendants' motion to stay production pending appellate review.

## **Background**

In the present action for patent infringement, Plaintiffs assert claims against Defendants for infringement of U.S. Patent No. 8,110,673, U.S. Patent No. 8,835,113, U.S. Patent No. 9,547,008, U.S. Patent No. 9,139,869, U.S. Patent No. 8,575,303, and U.S. Patent No. 8,455,613.[1] (Doc. No. 101, FAC ¶¶ 59-115.) Specifically, Plaintiffs allege that Defendants' "Super Bright Dyes" products infringe the patents-in-suit. (Id. ¶¶ 4, 41.)

The document at issue in the parties' discovery dispute is an email dated July 15, 2013 that was sent from Travis Jennings, an Affymetrix scientist, to Steven Yee, Affymetrix's in-house IP counsel, and Ryan Simon, Affymetrix's general counsel. (Doc. No. 212-1, Jennings Decl. ¶ 6.) The email was also sent to Dr. Jack Diwu, lead scientist and principal for third-party AAT BioQuest, Inc., as a carbon copy recipient. (Id. ¶ 7.) Mr. Jennings states that the document was created for the purpose of obtaining legal advice on intellectual property issues and patentability. (Id. ¶ 6.)

It is undisputed that at the time of the communication at issue, AAT was not

---

[1] In the first amended complaint, Plaintiffs also allege infringement of U.S. Patent No. 9,085,799. (Doc. No. 101, FAC ¶¶ 52-58.) But, on May 1, 2018, the Court granted Defendants' motion for summary judgment of non-infringement of the '799 patent. (Doc. No. 170.)

represented by its own counsel. (Doc. No. 212 at 1, 5.) Further, Defendants do not assert that AAT was represented by Affymetrix's in-house counsel. (Doc. No. 197 at 7 n.2.) In addition, it is undisputed that at the time of the communication at issue, Affymetrix and AAT had exchanged a non-binding letter of intent that had been amended twice, but the parties had not executed a formal license agreement.[2] (Doc. No. 198-1, Exs. D, F, G; Doc. No. 212 at 2.)

On November 15, 2017, in response to a subpoena, third-party AAT produced the document at issue to Plaintiffs. (Doc. No. 198 at 1, Doc. No. 241 at 3.) During the time the document was in Plaintiffs' possession, Plaintiffs cited to the document in their March 5, 2018 infringement contentions. (Doc. No. 241 at 3; Doc. No. 234 at 2.) On March 7, 2018, Defendants asserted a claim of privilege as to the document in their privilege log and clawed the document back under the terms of the protective order in this case. (Doc. No. 198-1, Ex. C.) Plaintiffs disputed Defendants' claim of privilege as to the document but complied with Defendants' request to destroy the document. (Id.)

On April 20, 2018, the parties filed a one-page joint motion for determination of a discovery dispute. (Doc. No. 165.) In the joint letter, Plaintiffs challenged Defendants' assertion of common interest privilege as to the document at issue. (Id.) On April 25, 2018, the Court referred the parties' discovery dispute to the Magistrate Judge. (Doc. No. 166.) On May 23, 2018, the parties filed a joint motion for the determination of a discovery dispute before the Magistrate Judge. (Doc. No. 186.)

On June 19, 2018, the Magistrate Judge issued an order on the parties' joint motion, rejecting Defendants' assertion of common interest privilege as to the document and granting Plaintiffs' motion to compel production of the document. (Doc. No. 197 at 1, 10.) The Magistrate Judge explained that because the document at issue was shared with a third-party business associate, AAT, any claim of attorney-client privilege was waived unless

---

[2] Affymetrix and AAT did not execute into a formal License and Supply Agreement until February 28, 2014. (Doc. No. 198-1, Ex. E.)

the common interest privilege exception applies. (Id. at 7.) The Magistrate Judge concluded that Defendants had failed to meet their burden of proving the applicability of the common interest exception because AAT was not represented by separate counsel at the time of the communication at issue. (Id. at 5-10.)

By the present filings, Defendants object to the Magistrate Judge's June 19, 2018 pursuant to Federal Rule of Civil Procedure 72(a). (Doc. No. 212.) In addition, Defendants move to stay production of the privileged material pending appellate review. (Doc. No. 209-1.)

## Discussion

**I.  Defendants' Rule 72(a) Objections**

Defendants object to the Magistrate Judge's June 19, 2018 order pursuant to Federal Rule of Civil Procedure 72(a) on the grounds that the Magistrate Judge erred in rejecting Defendants' claim of common interest privilege as to the document at issue. (Doc. No. 212 at 1-2.) In response, Plaintiffs argue that the Magistrate Judge correctly held that Defendants failed to satisfy their burden to establish the applicability of the common interest privilege to the communication at issue. (Doc. No. 241 at 1.)

A.  Legal Standards

i.  Rule 72(a) Objections

Under Federal Rule of Civil Procedure 72(a), a district judge "must consider timely objections and modify or set aside any part of [a magistrate judge's] order [on a non-dispositive pretrial matter] that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see 28 U.S.C. § 636(b)(1)(A); Osband v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002). Under this standard, "[a] magistrate judge's legal conclusions are reviewable *de novo* to determine whether they are "contrary to law" and findings of fact are subject to the 'clearly erroneous' standard." CollegeSource, Inc. v. AcademyOne, Inc., 2015 WL 4772644, at *2 (S.D. Cal. 2015) (citing Perry v. Schwarzenegger, 268 F.R.D. 344, 348 (N.D. Cal. 2010)); see Osband, 290 F.3d at 1041.

///

### ii. Attorney-Client Privilege and Common Interest Privilege

Privilege determinations in patent cases are governed by the law of the regional circuit, here the Ninth Circuit. See Waymo LLC v. Uber Technologies, Inc., 870 F.3d 1350, 1359 (Fed. Cir. 2017) ("We apply Ninth Circuit law to determine whether the District Court erred in its privilege determination."); In re Regents of University of California, 101 F.3d 1386, 1390 & n.2 (Fed. Cir. 1996). "'The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response to such disclosures.'" United States v. Ruehle, 583 F.3d 600, 607 (9th Cir. 2009). The Ninth Circuit has explained that "'[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed.'" United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002), as amended on denial of reh'g (Mar. 13, 2002); see also Ruehle, 583 F.3d at 607 ("[T]he [attorney-client] privilege stands in derogation of the public's right to every man's evidence and as an obstacle to the investigation of the truth, [and] thus, . . . [i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle.").

The party asserting the privilege bears the burden of proving all of the elements in the following eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Ruehle, 583 F.3d at 607-08; accord Martin, 278 F.3d at 999-1000; see also Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981) ("As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it.").

"Under the attorney-client privilege, it is a general rule that attorney-client communications made 'in the presence of, or shared with, third-parties destroys the confidentiality of the communications and the privilege protection that is dependent upon

that confidentiality.'" Nidec Corp. v. Victor Co. of Japan, 249 F.R.D. 575, 578 (N.D. Cal. 2007); see In re Pac. Pictures Corp., 679 F.3d 1121, 1126-27 (9th Cir. 2012) ("[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege."); Cohen v. Trump, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *13 (S.D. Cal. June 9, 2015) ("As a general rule, the attorney-client privilege is waived by voluntary disclosure of private communications to third parties."). "The reason behind this rule is that, [i]f clients themselves divulge such information to third parties, chances are that they would also have divulged it to their attorneys, even without the protection of the privilege." Pac. Pictures, 679 F.3d at 1127.

The joint defense privilege also known as the "common interest" privilege is an exception to the general rule that disclosure of privileged communications to a third party destroys the privilege. Nidec, 249 F.R.D. at 578. The Ninth Circuit has explained that the common interest privilege is not "a separate privilege." Pac. Pictures, 679 F.3d at 1129. Rather, it "is 'an extension of the attorney-client privilege.'" United States v. Gonzalez, 669 F.3d 974, 978 (9th Cir. 2012). The common interest privilege is "designed to allow attorneys for different clients pursuing a common legal strategy to communicate with each other." Pac. Pictures, 679 F.3d at 1129; Gonzalez, 669 F.3d at 978 ("'[T]he rationale for the joint defense rule [is that] persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.'").

The common interest privilege applies where: "(1) the communication is made by separate parties in the course of a matter of common interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." United States v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003); accord Nidec, 249 F.R.D. at 578. Further, "the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." Pac. Pictures, 679 F.3d at 1129. "[A] shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within [the privilege]." Id.

B. Analysis

Defendants argue that the Magistrate Judge erred in rejecting their assertion of the common interest privilege as to the document at issue. (Doc. No. 212 at 1-2.) Specifically, Defendants argue that the Magistrate Judge erred in concluding that they had failed to establish applicability of the common interest privilege based on the fact that AAT was not represented by counsel of its own. (Id. at 1-2, 5-17.) In response, Plaintiffs argue that the Magistrate Judge's rejection of Defendants' claim of privilege based on ATT's lack of counsel conforms with decisions of the Ninth Circuit and other courts. (Doc. No. 241 at 7-18.) In addition, Plaintiffs argue that the Magistrate Judge's rejection of Defendants' claim of privilege can also be affirmed on the alternative ground that the Magistrate Judge properly found that Defendants failed to establish the existence of an agreement with AAT to pursue a joint legal strategy. (Doc. No. 241 at 18-20.) The Court addresses each of these issues in turn below.

### i. The Parties' Lack of Agreement

In the June 19, 2018 order, the Magistrate Judge found that at the time of the communication at issue, there were only non-binding letters of intent between Affymetrix and AAT, not an executed option agreement. (Doc. No. 197 at 10.) The Magistrate Judge did not clearly err in making this determination.[3]

In order for the common interest privilege to apply, the parties must make the communication in pursuit of a joint strategy in accordance with some form of agreement—whether written or unwritten." Pac. Pictures, 679 F.3d at 1129. The communication at issue was sent on July 15, 2013. (Doc. No. 212-1, Jennings Decl. ¶ 6.) At that time, Affymetrix and AAT had merely signed a "non-binding" letter of intent dated November 11, 2012 that was subsequently amended on January 3, 2013 and June 24, 2013. (See Doc.

---

[3] Defendants argue that the Magistrate Judge did not make a factual finding in the order as to whether Affiymetrix and AAT had an agreement to pursue a joint strategy. (Doc. No. 238 at 8.) Even assuming Defendants are correct, for the reasons discussed below, the Court upon *de novo* review in the first instance would reach the same conclusion.

No. 198-1, Exs. D, F, G; see also Doc. No. 238 at 8.) The November 11, 2012 letter refers to itself as a "non-binding proposal" and contains a provision expressly stating that the "the Proposal is nonbinding." (Doc. No. 198-1, Ex. D ¶ 10.) That provision further provides that: "The parties acknowledge that they neither intend to enter, nor have they entered into any agreement to negotiate the Definitive Agreement pursuant to this document and either party may at any time prior to execution of such Definitive Agreement propose different terms from those summarized here or unilaterally terminate all negotiations without any liability whatsoever to the other party." (Id.) In light of this language, the Magistrate Judge did not err in concluding that the letters represent non-binding letters of intent and not an executed agreement.

Defendants note that the November 11, 2012 letter contains certain provision that were "intended to be binding," such as the letter's confidentiality provision. The November 11, 2012 letter states that the confidentiality provision set forth in that letter is binding on the parties. (Doc. No. 198-1, Ex. D ¶¶ 7, 10.) But the mere fact that the confidentiality provision in the letter was binding is insufficient to support Defendants' claim of common interest privilege. In order for the common interest privilege to apply, Defendants must show that the parties were pursuing a joint strategy in accordance with some form of an agreement. Pac. Pictures, 679 F.3d at 1129. An agreement to keep information confidential is not an agreement to pursue a joint strategy. All of the provisions related to the parties' joint venture set forth in the letters were "non-binding," and the parties expressly stated in the letters that they did not have a definitive agreement or even an agreement to negotiate an agreement. (See Doc. No. 198-1, Exs. D, F, G.)

Defendants argue that a common interest agreement does not have to be in writing and can be implied from the parties' conduct. (Doc. No. 212 at 18-19; Doc. No. 238 at 9.) The Ninth Circuit has explained that a joint defense agreement "may be implied from conduct and situation, such as attorneys exchanging confidential communications from clients who are or potentially may be codefendants or have common interests in litigation," and that "no written agreement is required." Gonzalez, 669 F.3d at 979. But, here, the

parties' conduct at the relevant time, as expressed through the written terms of their "non-binding proposal," was that they had no joint agreement or even an agreement to negotiate an agreement. (Doc. No. 198-1, Exs. D ¶ 10.) As such, the parties did not have an agreement to pursue a joint strategy at the time of the communication at issue. Thus, Defendants have failed to show that the communication at issue was made in pursuit of a joint strategy in accordance with some form of agreement. See Pac. Pictures, 679 F.3d at 1129.

### ii. AAT's Lack of Counsel

In the June 19, 2018 order, the Magistrate Judge concluded that Defendants had failed to meet their burden of establishing applicability of the common interest privilege based on the fact that AAT was not represented by counsel of its own. (Doc. No. 197 at 7-10.) The Magistrate Judge did not err in reaching this conclusion.

The Magistrate Judge's ruling that Defendants failed to establish applicability of the common interest privilege under the circumstances in this case is supported by Ninth Circuit law. The Ninth Circuit has explained that the common interest privilege is "designed to allow attorneys for different clients . . . to communicate with each other." Pac. Pictures, 679 F.3d at 1129. The Ninth Circuit has further stated that the rationale for the common interest privilege is that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." Gonzalez, 669 F.3d at 978. Thus, in describing the purpose of the common interest privilege, the Ninth Circuit has described the privilege as existing in situations where the parties sharing the common interest are each represented by counsel.

Further, several district courts within the Ninth Circuit have expressly held that the common interest "privilege only applies when clients are represented by separate counsel." Sec. & Exch. Comm'n v. Aequitas Mgmt., LLC, No. 3:16-CV-438-PK, 2017 WL 6329716, at *3 (D. Or. July 7, 2017), objections overruled sub nom. Sec. & Exch. Comission v. Aequitas Mgmt., LLC, No. 3:16-CV-00438-PK, 2017 WL 6328150 (D. Or. Dec. 11, 2017);

see, e.g., Swortwood v. Tenedora de Empresas, S.A. de C.V., No. 13CV362-BTM (BLM), 2014 WL 895456, at *4 (S.D. Cal. Mar. 6, 2014) ("Since Mr. Diez Barroso was not individually represented by counsel, Defendant can not establish the applicability of the common interest doctrine."); Finisar Corp. v. U.S. Bank Tr. Nat. Ass'n, No. C 07-04052 JF (PVT), 2008 WL 2622864, at *4 (N.D. Cal. June 30, 2008) ("'Under the strict confines of the common interest doctrine, the lack of representation for the remaining parties vitiates any claim to a privilege.'" (quoting Cavallaro v. United States, 153 F. Supp. 2d 52, 61 (D. Mass. 2001))); OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc., No. CV-14-085-LRS, 2015 WL 11117150, at *2 (E.D. Wash. June 1, 2015) (explaining that for the common interest privilege to apply "[t]he communications, however, must be shared by attorneys for the separate parties"); Carl Zeiss Vision Int'l Gmbh v. Signet Armorlite Inc., No. CIV 07CV-0894DMS POR, 2009 WL 4642388, at *7 (S.D. Cal. Dec. 1, 2009). In addition, the Third Circuit has also expressly held that the common interest "privilege only applies when clients are represented by separate counsel." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 365 (3d Cir. 2007). Also, the Restatement (3d) of the Law Governing Lawyers provides: "A person who is not represented by a lawyer and who is not himself or herself a lawyer cannot participate in a common-interest arrangement . . . ." Restatement (3d) of the Law Governing Lawyers § 76(1) cmt. d (2000). As such, the Magistrate Judge's ruling was well supported in the law, and the Magistrate Judge correctly held that because third-party corporate entity AAT was not represented by counsel, Defendants failed to satisfy their burden of establishing applicability of the common interest privilege.

Defendants argue that there is no binding Ninth Circuit precedent expressly holding that for the common interest privilege to apply, both parties must be represented by separate counsel. (Doc. No. 212 at 6-7.) Although this is true, as shown above, there is ample case law within the Ninth Circuit supporting the Magistrate Judge's conclusion. Moreover, notably, Defendants have failed to identify any Ninth Circuit case law in support of their position. Defendants fail to identify any decision where the Ninth Circuit or a district court within the Ninth Circuit found the common interest privilege applicable where one of the

parties to the agreement was not represented by counsel.[4] Further, even assuming that it could be argued that the law is unclear on this particular issue, the Ninth Circuit has explained that the common interest privilege is an extension of the attorney-client privilege. Gonzalez, 669 F.3d at 978. And the attorney-client privilege is "'to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'"[5] Ruehle, 583 F.3d at 607; see Martin, 278 F.3d at 999. As a result, the Court rejects Defendants' challenges to the Magistrate Judge's denial of Defendants' claim of privilege on the basis that AAT was not represented by counsel of its own.[6]

---

[4] The Court does not find persuasive Defendants' citation to United States v. Montgomery, 990 F.2d 1264, 1993 WL 74314 (9th Cir. 1993). (Doc. No. 212 at 7-8.) Montgomery is easily distinguishable from the present case. In Montgomery, the Ninth Circuit found privileged a statement made by a co-defendant while the two co-defendants were discussing with an Assistant Federal Public Defender the process for obtaining a public defender. See id. at 1-2, 5. The Ninth Circuit found the statement to be privileged even though the public defender at issue ultimately did not represent the defendant who made the statement. See id.

But the Ninth Circuit has explained that "[p]rospective clients' communications with a view to obtaining legal services are plainly covered by the attorney-client privilege under California law, . . . regardless of whether they ever retain the lawyer." Barton v. U.S. Dist. Court for Cent. Dist. of Cal., 410 F.3d 1104, 1111 (9th Cir. 2005); see Montgomery, 1993 WL 74314, at *3 ("[T]he district court reasonably concluded that McMeniman sought legal advice from Nelson because he was an attorney, wanted his help in obtaining counsel, and discussed with him the charges for which she required representation."). Thus, the co-defendant in Montgomery had an attorney-client relationship for privilege purposes with that federal defender with respect to the communications at issue in that case even though the federal defender was never ultimately retained as her counsel. In contrast, here, Defendants do not assert that AAT or its principle Dr. Diwu ever engaged in communications with Affymetrix's legal counsel with a view towards obtaining legal services. As such, Montgomery is inapplicable to the present case.

In addition, Montgomery is unpublished disposition from 1993. As a result, Defendants are not permitted to cite Montgomery to this Court under 9th Circuit Rule 36-3(c).

[5] In addition, the Court rejects Defendants' policy arguments against the Magistrate Judge's ruling. (See Doc. No. 212 at 12-15.) The Court agrees with Plaintiffs that Defendants' policy arguments are no more than criticisms of the attorney-client privilege itself and misconstrue the purposes of the attorney-client privilege. (Doc. No. 241 at 12-15.)

[6] The Court notes that neither it nor the Magistrate Judge holds that there is a bright-line rule requiring that in order for the common interest privilege to apply, the parties to the agreement must always be represented by counsel. Rather, the Court simply concludes that under the facts of this case, the common interest privilege does not apply in light of the fact that AAT was not represented by counsel at the relevant time.

### iii. Conclusion

In sum, Defendants have failed to show that the Magistrate Judge erred in rejecting their claim of common interest privilege as to the document at issue. Because the Magistrate Judge properly concluded that Defendants failed to establish applicability of the common interest privilege, any claim of attorney-client privilege as to the document was waived when the document was shared with third-party AAT. See Pac. Pictures Corp., 679 F.3d at 1126-27; Nidec, 249 F.R.D. at 578; Cohen, 2015 WL 3617124, at *13. As a result, the Magistrate Judge correctly granted Plaintiffs' motion to compel and ordered production of the document. The Court denies Defendants' Rule 72(a) objections to the Magistrate Judge's June 19, 2018 order.

## II. Motion to Stay Pending Appellate Review

Defendants request that, in the event the Court denies their Rule 72(a) objections, the Court stay any order requiring production of the document pending appellate review of the Court's order by the Federal Circuit. (Doc. No. 209-1 at 1.) In response, Plaintiffs argue that the Court should deny Defendants' request for a stay. (Doc. No. 234 at 1.)

### A. Legal Standards

"A stay is not a matter of right . . . . It is instead an exercise of judicial discretion . . . [that] is dependent upon the circumstances of the particular case." Lair v. Bullock, 697 F.3d 1200, 1203 (9th Cir. 2012) (quoting Nken v. Holder, 556 U.S. 418, 433 (2009)) (internal quotation marks omitted).

In deciding whether to grant a stay pending appeal, a court considers the following four factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Nken, 556 U.S. at 426 (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)); accord Lair, 697 F.3d at 1203. "'The first two factors . . . are the most critical,' and the last two steps are reached '[o]nce an applicant satisfies the first two factors." Washington v. Trump, 847 F.3d 1151, 1164 (9th Cir. 2017)

(quoting Nken, 556 U.S. at 434, 435). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." Nken, 556 U.S. at 433–34.

B.   Analysis

    i.   Likelihood of Success on the Merits

In order to satisfy the first factor, the movant "must make a strong showing that success on the merits is likely." Lair, 697 F.3d at 1204. The Supreme Court has explained that "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" Nken, 556 U.S. at 434. "'[M]ore than a mere 'possibility' of relief is required.'" Id. Thus, "'at a minimum,' a petitioner must show that there is a "substantial case for relief on the merits." Lair, 697 F.3d at 1204.

Defendants have failed to make a strong showing of likelihood of success on the merits on appeal. Defendants' assertion of common interest privilege as to the document at issue has now been rejected by two judges. Further, the Court has rejected Defendants' claim of common interest privilege on two separate grounds. As such, in order for Defendants to be successful on appeal, they would need establish that both grounds are incorrect.

Further, in order for Defendants to obtain immediate appellate review of the Court's privilege determination, Defendants would need to show entitlement to a writ of mandamus. (See Doc. No. 209-1 at 4; Doc. No. 239 at 1 (stating that Defendants are prepared to seek mandamus review before the Federal Circuit).) The Supreme Court has explained that "[t]he writ of mandamus is an extraordinary remedy[ ] to be reserved for extraordinary situations." Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289 (1988). In order to establish entitlement to mandamus relief, Defendants, among other requirements, must show that they "'have no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process.'" Waymo LLC v. Uber Techs., Inc., 870 F.3d 1350, 1357 (Fed. Cir. 2017) (quoting Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81 (2004)).

The Federal Circuit has noted that "[a]ppellate courts generally den[y] review of pretrial discovery orders [such as ruling on claims of privilege] because postjudgment appeals generally suffice to protect the rights of litigants and ensure the vitality of the attorney-client privilege . . . by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence." Id. at 1357–58 (citations and internal quotation marks omitted). Thus, it is unlikely that Defendants will be able to satisfy the "no other adequate means for relief" requirement for obtaining mandamus relief.

Defendants argue that immediate relief through mandamus is appropriate for a "particularly injurious or novel privilege ruling." (Doc. No. 239 at 1.) But the Federal Circuit recently denied a petition for writ of mandamus where the appellant argued that the lower court's privilege ruling was particularly injurious or novel. See Waymo, 870 F.3d at 1357-59 (noting that "even if a privilege ruling is particularly injurious or novel, a petition for writ of mandamus is one of 'several potential avenues of review'"). As a result, Defendants have failed to make of strong showing of likelihood of success on the merits and, thus, have failed to satisfy the second factor of the four-part test.

ii. Irreparable Injury

The Supreme Court has explained that "simply showing some 'possibility of irreparable injury,' fails to satisfy the second factor." Nken, 556 U.S. at 434–35 (citation omitted). Rather the movant must "show under the second factor that there is a probability of irreparable injury if the stay is not granted." Lair, 697 F.3d at 1214.

Defendants have failed to make a sufficient showing of irreparable injury absent a stay. Defendants argue that they will suffer irreparable harm absent a stay because if Plaintiffs are given the opportunity to use and study the document at issue before Defendants have a chance to seek appellate review, there will be no way for Plaintiffs to unlearn what they have obtained from the document if Defendants are successful on appeal. (Doc. No. 209-1.) The Court rejects this argument.

As Defendants acknowledge, the document at issue has previously been produced to Plaintiffs in this litigation, and Plaintiffs had the document in their possession for over

three months. (Doc. No. 198 at 8; Doc. No. 198-1, Ex. C; Doc. No. 239 at 1.) As such, Plaintiffs have already had an opportunity to use and analyze the document at issue. Indeed, during the period when the document was in their possession, Plaintiffs cited to the document in their infringement contentions prior to destroying the document pursuant to Defendants' claim of privilege. (Doc. No. 234 at 2; Doc. No. 241 at 3.) Defendants fail to identify any specific harm that could potentially result if Plaintiffs were permitted to have further possession and use of the document. As a result, Defendants have failed to show a probability of irreparable injury absent a stay and, thus, have failed to satisfy the second factor of the four-part test.

### iii. Conclusion

In sum, Defendants have failed to satisfy the first factor and the second factor of the four-part test for obtaining a stay pending appellate review. As such, Defendants have failed to establish entitlement to stay pending appellate review, and the Court, exercising its sound discretion, denies Defendants' request for a stay. See Nken, 556 U.S. at 434, 435 (explaining that the first two factors of the four-part test "are the most critical" and that a court need not reach the last two factors if the movant has not satisfied the first two factors); Washington, 847 F.3d at 1164 (same).

### **Conclusion**

For the reasons above, the Court denies Defendants' Rule 72(a) objections to the Magistrate Judge's June 19, 2018 order. In addition, the Court denies Defendants' motion to stay production of the document at issue pending appellate review.

**IT IS SO ORDERED.**

DATED: August 6, 2018

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT