# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; BECTON, DICKINSON AND COMPANY; SIRIGEN, INC.; and SIRIGEN II LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>AFFYMETRIX, INC.; and LIFE TECHNOLOGIES CORP.,<br><br>Defendants. | Case No.: 17-cv-01394-H-NLS<br><br>**ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' <u>DAUBERT</u> MOTION TO EXCLUDE PORTIONS OF EXPERT TESTIMONY**<br><br>[Doc. No. 365.] |

On February 25, 2019, Plaintiffs the Regents of the University of California, Becton, Dickinson and Company, Sirigen, Inc., and Sirigen II Limited filed a <u>Daubert</u> motion to exclude portions of the expert testimony from Defendants' two technical experts, Dr. Kevin Burgess and Dr. Paul Robinson. (Doc. No. 365.) On March 8, 2019, Defendants Affymetrix, Inc. and Life Technologies Corp. filed a response in opposition to Plaintiffs' <u>Daubert</u> motion. (Doc. No. 390.) On March 15, 2019, Plaintiffs filed a reply. (Doc. No. 392.)

The Court held a hearing on the matter on March 21, 2019. Donald R. Ware, Barbara

Fiacco, Marco Quina, and Jesse Hindman appeared for Plaintiffs. Douglas E. Lumish and Brent T. Watson appeared for Defendants. For the reasons below, the Court denies Plaintiffs' Daubert motion without prejudice.

## Background

On February 9, 2018, Plaintiffs filed the operative complaint for patent infringement in this action against Defendants, alleging infringement of U.S. Patent No. 9,085,799, U.S. Patent No. 8,110,673, U.S. Patent No. 8,835,113, U.S. Patent No. 9,547,008, U.S. Patent No. 9,139,869, U.S. Patent No. 8,575,303, and U.S. Patent No. 8,455,613.[1] (Doc. No. 101, FAC.) Specifically, Plaintiffs allege that Defendants' "Super Bright Dyes" products infringe the patents-in-suit. (Id. ¶¶ 4, 41.)

On March 26, 2018, the Court issued a claim construction order, construing the disputed claim terms from the '799 patent, the '673 patent, and the '113 patent. (Doc. No. 138.) On May 1, 2018, the Court granted Defendants' motion for summary judgment of non-infringement of the '799 patent. (Doc. No. 170.) On May 14, 2018, the Court denied Defendants' motion for summary judgment of non-infringement of the '673 patent and the '113 patent. (Doc. No. 183.)

On September 4, 2018, the Court issued a second claim construction order, construing the disputed claim terms from the '008 patent, the '869 patent, the '303 patent, and the '613 patent. (Doc. No. 274.) On November 13, 2018, the Court issued the current scheduling order for this action. (Doc. No. 331.) By the present motion, Plaintiffs move to exclude portions of the expert testimony from Defendants' two technical experts, Dr. Kevin Burgess and Dr. Paul Robinson. (Doc. No. 375.)

## Discussion

### I. Legal Standards for Daubert Motion

A district court's decision to admit expert testimony under Daubert in a patent case is governed by the law of the regional circuit. Summit 6, LLC v. Samsung Elecs. Co., 802

---

[1] Plaintiffs no longer assert infringement of the '869 patent in this action. (See Doc. No. 375 at 1.)

F.3d 1283, 1294 (Fed. Cir. 2015). When considering expert testimony offered pursuant to Rule 702, the trial court acts as a "gatekeeper" by "making a preliminary determination of whether the expert's testimony is reliable." Elsayed Mukhtar v. Cal. State Univ., Hayward, 299 F.3d 1053, 1063 (9th Cir. 2002); see Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999); Daubert, 509 U.S. at 597. Under Rule 702 of the Federal Rules of Evidence, a court may permit opinion testimony from an expert only if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

The test for reliability of expert testimony under Daubert is flexible and depends on the particular circumstances of the case. Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). "To aid courts in exercising [their] gatekeeping role, the Supreme Court has suggested a non-exclusive and flexible list of factors that a court may consider when determining the reliability of expert testimony, including: (1) whether a theory or technique can be tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the theory or technique; and (4) whether the theory or technique enjoys general acceptance within the relevant scientific community." Messick v. Novartis Pharm. Corp., 747 F.3d 1193, 1197 (9th Cir. 2014); Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014) (en banc). The Ninth Circuit has stressed that this list of factors is meant to be helpful, not definitive. Alaska Rent-A-Car, 738 F.3d at 969.

"Under Daubert, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." Primiano v. Cook, 598 F.3d 558, 564-65 (9th Cir. 2010). "'[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology.'" Primiano, 598 F.3d at 564. "Shaky but admissible evidence is to be attacked by cross examination, contrary

evidence, and attention to the burden of proof, not exclusion." Id. (citing Daubert, 509 U.S. at 594, 596); accord Summit 6, 802 F.3d at 1296. "Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car, 738 F.3d at 969. Further, the Ninth Circuit has explained that "Rule 702 should be applied with a 'liberal thrust' favoring admission." Messick, 747 F.3d at 1196.

Whether to admit or exclude expert testimony lies within the trial court's discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-42 (1997); United States v. Verduzco, 373 F.3d 1022, 1032 n.6 (9th Cir. 2004) ("We . . . have stressed that the 'trial court has broad discretion to admit or exclude expert testimony'."). The Ninth Circuit has explained that "[a] trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011).

**II. Analysis**

In their motion, Plaintiffs provide three separate grounds for excluding portions of the testimony from Defendants' experts. (Doc. No. 375 at 3.) The Court addresses each of these arguments in turn below.

    A.    Dr. Burgess's obviousness combinations.

Plaintiffs argue that in his expert report, Dr. Burgess relies on prior art references and combinations that Defendants did not select in their October 19, 2018 election of prior art references, and, thus, the Court should strike these additional references from Dr. Burgess's invalidity opinions. (Doc. No. 375 at 4-13.) In response, Defendants argue that Dr. Burgess properly limited his obviousness analysis to the prior art references that were identified in the October 19, 2018 disclosure. (Doc. No. 390 at 3.)

On September 20, 2018, the Court issued an order requiring Plaintiffs to limit their asserted claims of infringement to no more than 16 patent claims in total, and for Defendants to limit their anticipation and obviousness defenses to no more than 20 prior art references, and the Court provided the parties with deadlines for making these

reductions. (Doc. No. 285.) In the order, the Court defined a "prior art reference" as "a single prior art reference that is asserted to anticipate, or a specific combination of individual prior art references asserted to support an obviousness claim." (Id. at 2.) On October 12, 2018, Plaintiffs made their election of asserted claims, and on October 19, 2018, Defendants made their election of prior art references. (Doc. No. 375 at 4; Doc. No. 384-7, Ex. G.)

On December 7, 2018, Defendants served Plaintiffs with the opening expert report of Dr. Burgess. (Doc. No. 375-1, Ex. 4, Burgess Opening Report.) In his expert report, Dr. Burgess analyzes nine separate anticipatory references/obviousness combinations: (1) Hou and Inganas; (2) Hou, Bazan, and Haugland; (3) Huang; (4) Chen; (5) Chen and Gaylord; (6) Huang and Chen; (7) Huang, Chen, and Gaylord; (8) Huang and Liu; and (9) Huang, Liu, and Gaylord. (Id. at 46-59.) Each of these references/combinations was selected in Defendants' October 19, 2018 elections.[2] (Compare id. at 23-33, 46-59 with Doc. No. 384-7, Ex. C; see Doc. No. 390 at 3.)

Plaintiffs note that at times, Dr. Burgess refers to additional pieces of literature, such as Louiseau, Towns and Xue, in his invalidity analysis. (Doc. No. 375 at 7-9 (citing Doc. No. 375-1, Burgess Opening Report ¶¶ 189, 195, 196).) In response, Defendants argue that it was proper for Dr. Burgess to cite these additional materials in his invalidity analysis as background material illustrating the state of the art and general knowledge of a person of ordinary skill. (Doc. No. 390 at 4-8.) The Court agrees. An invalidity expert is permitted to rely on additional unelected references "when they are being used only as 'background' material." Fujifilm Corp. v. Motorola Mobility LLC, No. 12-CV-03587-WHO, 2015 WL 757575, at *30 (N.D. Cal. Feb. 20, 2015); see also Verinata Health, Inc. v. Sequenom, Inc., No. C 12-00865 SI, 2014 WL 4100638, at *5 (N.D. Cal. Aug. 20, 2014); Genentech, Inc. v. Trustees of Univ. of Pennsylvania, No. C 10-2037 LHK PSG, 2012 WL

---

[2] Specifically, these combinations were previously disclosed as Defendants' elected references Nos. 1, 2, 3, 5, 7, 8, 9, 13, and 14. (See Doc. No. 384-7, Ex. C.)

424985, at *3 (N.D. Cal. Feb. 9, 2012).

Moreover, the Court notes that even if the Court considers these additional pieces of literature as additional prior art references and not simply background material, Plaintiffs have failed to explain how they have been prejudiced by the inclusion of these additional references. Plaintiffs do not assert that these are brand new references that were not previously disclosed in Defendants' invalidity contentions. Plaintiffs were able to depose Dr. Burgess regarding these additional references, and Plaintiffs were able to serve their own rebuttal expert report addressing these references. Further, as Plaintiffs themselves note, the Court's September 20, 2018 order did not place a limit on the number of individual references that Defendants could include as part of a single obviousness combination. (Doc. No. 375 at 5; Doc. No. 406 at 1.) Thus, even if Dr. Burgess's report included additional references, Dr. Burgess's analysis was still limited to no more than 20 specific anticipatory references/obviousness combinations, which complies with the purpose of the Court's September 20, 2018 order. Indeed, in his report, Dr. Burgess's relies on only 9 specific anticipatory references/obviousness combinations in performing his invalidity analysis, well under the limit of 20 set forth in the September 20, 2018 order. In sum, the Court declines to strike from Dr. Burgess's report these additional pieces of literature.

B.   Dr. Burgess's Opinions Related to Plaintiffs' Allegations of Copying

Plaintiffs argue that the Court should exclude portions of Dr. Burgess's opinions related to Defendants' alleged copying of BD's products because Dr. Burgess utilizes an incorrect legal standard in his analysis. (Doc. No. 375 at 13-15.) In response, Defendants argue that Dr. Burgess's analysis of BD's copying allegations is proper. (Doc. No. 390 at 8-9.)

"[C]opying by others" is "a secondary considerations or objective indicia of non-obviousness." Apple Inc. v. Samsung Elecs. Co., 839 F.3d 1034, 1052 (Fed. Cir. 2016). The Federal Circuit has explained: "'Copying may indeed be another form of flattering praise for inventive features,' and thus evidence of copying tends to show nonobviousness. The fact that a competitor copied technology suggests it would not have been obvious."

WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1336 (Fed. Cir. 2016) (citations omitted). "[C]opying requires the replication of a specific product. This may be demonstrated either through internal documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a virtually identical replica, or access to, and substantial similarity to, the patented product (as opposed to the patent)." Iron Grip Barbell Co. v. USA Sports, Inc., 392 F.3d 1317, 1325 (Fed. Cir. 2004).

Plaintiffs argue that because Dr. Burgess's analysis in his opening expert report focuses on the asserted patents relative to the prior literature rather than on Defendants' development of the accused products, these portions of his analysis are legally erroneous. (Doc. No. 375 at 14-15 (citing Doc. No. 375-1, Ex. 4, Burgess Opening Report ¶¶ 246-49; Doc. No. 375-2, Ex. 5 at 143:20-21).) In response, Defendants note that in his rebuttal expert report, Dr. Burgess does indeed examine the development of the products at issue in response to Plaintiffs' copying allegations. (Doc. No. 390 at 8 (citing Doc. No. 390-4, Ex. D, Burgess Rebuttal Report ¶¶ 62-69, 285-300).) Defendants further argue that Dr. Burgess's analysis of what was well known in the art is relevant to rebut Plaintiffs' ability to establish a nexus between the alleged copying and the novel aspects claimed by the patents. (Doc. No. 390 at 9.)

The Federal Circuit has explained that "'a nexus between the copying and the novel aspects of the claimed invention must exist for evidence of copying to be given significant weight in an obviousness analysis.'" Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC, 683 F.3d 1356, 1364 (Fed. Cir. 2012). Dr. Burgess's analysis of what was known in the art to a person of ordinary skill is relevant to the determination of whether there was a nexus between the alleged copying and the novel aspects of the claimed invention. As such, the Court declines to exclude Dr. Burgess's opinions related to Plaintiffs' allegations of copying.

///

///

C. Dr. Burgess's and Dr. Robinson's Opinions Related to Defendants' Staining Buffers

Plaintiffs argue that the Court should exclude Dr. Burgess's and Dr. Robinson's opinions comparing Defendants' first and second staining buffers on the grounds that their opinions are unreliable because they lack sufficient foundation. (Doc. No. 375 at 15-19.) In response, Defendants argue that Dr. Burgess's and Dr. Robinson's opinions regarding the staining buffers have sufficient foundation. (Doc. No. 390 at 9-14.)

In their expert reports, Dr. Burgess and Dr. Robinson provide certain non-infringement opinions that are based on experimental data from Affymetrix comparing Defendants' old and new staining buffers. (Doc. No. 390-4, Burgess Rebuttal Report ¶¶ 216-23; Doc. No. 390-5, Robinson Rebuttal Report ¶¶ 106-08.) In forming these opinions, Dr. Burgess and Dr. Robinson interviewed Dr. Castle Funatake, who supervised the experiments that generated the data. (Doc. No. 390-4, Burgess Rebuttal Report ¶¶ 217; Doc. No. 390-5, Robinson Rebuttal Report ¶¶ 107.)

Plaintiffs argue that Dr. Burgess's and Dr. Robinson's opinions relying on the Funatake data should be excluded because the two experts did not consider or have access to certain product design and manufacturing information that Plaintiffs argue is critical to performing a proper comparison analysis. (Doc. No. 375 at 17-19.) In response, Defendants argue that Plaintiffs' criticism of Dr. Burgess's and Dr. Robinson's reliance on the Funatake data goes to the weight of the expert testimony, not its admissibility. (Doc. No. 390 at 13.) The Court agrees. As such, the Court declines to exclude Dr. Burgess's and Dr. Robinson's opinions comparing Defendants' first and second staining buffers.[3] See Alaska Rent-A-Car, 738 F.3d at 970 (affirming the denial of a Daubert motion where the movant's challenges went to "the weight of the testimony and its credibility, not its

---

[3] In their motion, Plaintiffs also criticize the timing of Defendants' production of the Funatake data. (Doc. No. 375 at 15-17.) The Court notes that Plaintiffs never raised any issue with Defendants' production of the Funatake data with the Court through the Court's discovery dispute process, (Doc. No. 331 at 3), prior to the close of discovery.

admissibility"); Primiano, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." (citing Daubert, 509 U.S. at 594, 596)).

## Conclusion

For the reasons above, the Court denies Plaintiffs' Daubert motion without prejudice to a contemporaneous objection at trial.

**IT IS SO ORDERED.**

DATED: March 21, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT